UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                        1:21-MJ-0314
     v.                                                    (DJS)

BRANDON FELLOWS,
                       Defendant.
_____

## DECISION and ORDER

On June 14, 2021, in the District Court for the District of Columbia, the United States Government filed its Third Motion to Revoke Defendant Brandon Fellows' pretrial release. *United States v. Fellows*, 21-CR-083 (D. D.C.) (TNM), Dkt. No. 30. That Motion set forth the background and history of the Defendant's time on supervision. *Id.* In connection with the present matter, the Court has considered the following:

    A.    The Initial Pretrial Services Report, dated January 19, 2021
    B.    The Criminal Complaint, dated January 15, 2021
    C.    The Indictment
    D.    The Petition for Warrant, dated June 14, 2021
    E.    The Arrest Warrant, dated June 15, 2021
    F.    The District of Columbia Docket
    G.    The Pretrial Services Agency Status Reports dated May 5, 2021 and May 26, 2021
    H.    The Government's Third Motion to Revoke the Defendant's pretrial status
    I.    The arguments and evidence presented during the Detention Hearing held in this Court
    J.    The Government's Letter regarding the authority and jurisdiction of this Court, dated June 17, 2021
    K.    The Defendant's Letter in response, dated June 17, 2021
    L.    The Government's Reply Letter, dated July 17, 2021

The Defendant was initially seen by this Court in the Northern District of New York after his arrest on misdemeanor charges arising out of his activities in Washington, D.C. on January 6, 2021 wherein he is alleged to have forcibly entered the United States Capitol in order to impede, disrupt and disturb the orderly conduct of business by the United States House of Representatives and the United States Senate. *United States v. Fellows*, 21-MJ-032 (N.D.N.Y.) (DJS), Dkt. No. 1. On January 19, 2021, I held a detention hearing and, after hearing arguments from counsel and reviewing the pretrial services report prepared by the Probation Department, I imposed various conditions of release, including home detention and electronic monitoring. *Id.* at Dkt. No. 7. Thereafter, the conditions were reviewed and modified by Magistrate Judge Robin Meriweather in the District of Columbia, and the Defendant was placed on GPS monitoring and a curfew. *United States v. Fellows*, 21-CR-083, Dkt. No. 9. Supervision was to be performed by the Northern District of New York on a courtesy basis, and part of the conditions of release required that the Defendant "comply with courtesy supervision in the Northern District of New York." *Id.*

Thereafter, on February 5, 2021, the Grand Jury in the District of Columbia indicted the Defendant on four misdemeanor charges, as well as a felony charge under 18 U.S.C. § 1512(c)(2) for obstructing an official proceeding and aiding and abetting the same. *United States v. Fellows*, 21-CR-083, Dkt. No. 7. Since the Defendant's arrest, there have been difficulties regarding his supervision in the Northern District of New York. These have resulted in proceedings before District Court Judge Trevor N. McFadden in the District of Columbia, who has in turn modified the Defendant's

conditions of release. *See United States v. Fellows*, 21-CR-083, at Text Minute Entries dated April 19, 2021 and May 6, 2021. For example, on one occasion the Defendant's supervision was elevated from a curfew to home detention. *Id.* On the most recent occasion, Judge McFadden ordered the Defendant to report to the United States Probation Department in this District for a mental health evaluation and comply with all treatment recommendations. *Id.* This Court notes that the District of Columbia Court docket also reveals that the Defendant acted inappropriately during a court proceeding held via remote means, and therefore was required to report for all future proceedings in person. *Id.* at Text Minute Order dated April 19, 2021.

In connection with the aforesaid court-ordered mental health examination, on or about June 14, 2021, the Defendant called his Probation Officer indicating that he had an appointment for 11 o'clock that day but was canceling it because he was not feeling well. Nevertheless, the Defendant was planning on going to work. When questioned about this apparent inconsistency, the Defendant asked the probation officer if she had "checked [her] hormones." *United States v. Fellows*, 21-CR-083, Dkt. No. 30; Petition for Warrant dated June 14, 2021. The Court does not view this statement in isolation because, as noted in the status reports, and as referenced in the hearing, the Defendant has made numerous inappropriate statements to his Probation Officer, which include sexually explicit statements and large doses of profanity. *See* Status Report dated May 26, 2021; Rennie Memorandum dated May 26, 2021.

The United States Probation Officer then indicated to the Defendant that he needed to come in and report to Probation. Petition for Warrant. The Defendant asked his

Probation Officer what they were going to talk about, and the Probation Officer indicated that they would discuss the topic when he arrived. *Id.* Shortly after this discussion, the Defendant obtained the telephone number for the Probation Officer's former home address in Massachusetts, called it, and spoke with the Probation Officer's mother. *Id.* That contact with a family member was relayed to the Probation Officer, which caused significant distress. It should be noted that the Defendant's pretrial services report indicated that on a prior occasion, in connection with a Town of Guilderland Court proceeding, when the Defendant was supposed to provide his phone number, he instead submitted the phone number of the presiding judge's wife. This was ultimately discovered when Court personnel called the number; this led to the self-recusal of that judge. *Id*. Mr. Fellows' Probation Officer perceived this attempt to contact her family member as representing a course of intimidation and was consistent with his general noncompliance while on release. *Id*.

Probation requested the Defendant to report two days in a row, which he did. In the interim, the Probation Department sought a warrant from Judge McFadden. An arrest warrant was issued on June 15, 2021. Dkt. No. 1. An initial appearance was held on that date in Albany, New York, during which time the Defendant was provided with local counsel, and was provided a copy of the arrest warrant. A detention hearing was scheduled for the next day and was held on June 16, 2021. The Court authorized counsel to submit additional filings by June 17, 2021, and those filings were received.

## I. AUTHORITY TO HOLD A DETENTION HEARING

As a preliminary matter, the Government has raised a question regarding this Court's authority to hold a hearing and, potentially, release the Defendant on further or additional conditions to those already imposed by Judge McFadden in the District of Columbia. This legal position represents somewhat of a change, as the Government had initially conceded at the Defendant's first appearance that the Defendant was entitled to a detention hearing so that the Court could weigh facts in favor of, or against, release on conditions. *See* Text Minute Entry Dated June 15, 2021. The Government's present position is that the Bail Reform Act does not mandate that the Court hold a detention hearing. Dkt. No. 5. Further, the Government argues, any reference to a detention hearing contained within Rule 40 of the Federal Rules of Criminal Procedure is purely discretionary, and so no hearing need actually be held in this district. *Id.* Finally, the Government notes that in this case a "no bond warrant" was issued by Judge McFadden, which should effectively preclude a hearing or consideration of release. *Id.*

The Government's initial position recognizing the right of Mr. Fellows to a full detention hearing and a written detention decision is more persuasive. Rule 40 applies specifically to a situation where a defendant is arrested for an alleged violation of conditions of release where the arrest occurs in a district other than the district that set the conditions. If the conditions at issue had been set in this district, an immediate bond revocation hearing would be held before the judge that set the initial conditions. But where the violation is alleged to have occurred in a completely different state, the question arises whether the defendant is entitled to some consideration of release prior to his or her

return to the prosecuting court which, under the limitations of the Marshal's service, may take some time.

Initially there was uncertainty as to this question. In particular, in a 2003 Massachusetts case, Magistrate Judge Collings reviewed the then-existing statute and concluded that she had no authority or power to hold the detention hearing or to release the defendant accused of violating conditions of release, and that her role was limited to providing a copy of the warrant to assure that the defendant was the individual named in the warrant. *United States v. Zu Quan Zhu*, 215 F.R.D. 21, 26 (D. Mass. 2003). However, after that decision Rule 40 was amended in 2006 to state in pertinent part:

> **(a) In General.** A person must be taken without unnecessary delay before a magistrate judge in the district of arrest if the person has been arrested under a warrant issued in another district for:
> **(i)** failing to appear as required by the terms of that person's release under 18 U.S.C. §§ 3141-3156 or by a subpoena; or
> **(ii)** violating conditions of release set in another district.
> **(b) Proceedings.** The judge must proceed under Rule 5(c)(3) as applicable.
> **(c) Release or Detention Order.** The judge may modify any previous release or detention order issued in another district, but must state in writing the reasons for doing so.

FED. R. CRIM. P. 40. As noted by the Advisory Committee, the Rule was specifically amended to correct the perception that a magistrate judge in an arresting district was not authorized to hold a detention hearing and, if appropriate, to set conditions of release. FED. R. CRIM. P. 40, Advisory Committee Notes, 2006. The Advisory Committee Notes provide:

> Rule 40 currently refers only to a person arrested for failing to appear in another district. The amendment is intended to fill a perceived gap in the rule that a magistrate judge in the district of arrest lacks authority to set release conditions for a person arrested only for violation of conditions of

- 6 -

release. *See, e.g., United States v. Zhu*, 215 F.R.D. 21, 26 (D. Mass. 2003). The Committee believes that it would be inconsistent for the magistrate judge to be empowered to release an arrestee who had failed to appear altogether, but not to release one who only violated conditions of release in a minor way. Rule 40(a) is amended to expressly cover not only failure to appear, but also violation of any other condition of release.

In light of the foregoing, there is very little question that this Court is authorized to hold a detention hearing. Nevertheless, the Government argues that such a hearing is wholly discretionary and in fact need not be held. The Court disagrees. As an initial point, it is the Government itself that is seeking to alter the Defendant's release status as set by Judge McFadden. In other words, at the present time this Defendant has conditions of release that have already been set, and it is the Government's desire that I change those conditions and detain the Defendant in order to ensure his appearance for the violation of condition hearing to be held in the District of Columbia. While it is clear that I have authority under Rule 40(c) to do so, I am only authorized to take that step after articulating my reasons in writing. The statute itself contemplates this Court having to make a decision regarding detention or release, and it would be anomalous to basic principles of due process to not allow the Defendant and his counsel the opportunity of notice and the right to be heard on that important issue. The Court cannot make an informed decision without that hearing. Of course, the hearing itself can be relatively informal, and the Government is authorized to proceed by way of proffer - which it did in this case - but this Court cannot simply refuse to hold a hearing. The Government's reliance on *United States v. Morris*, 2000 WL 1455244 (N.D.N.Y. Sept. 21, 2000) is inapposite, as Magistrate Judge Peebles' well-reasoned decision, and the Circuit cases he relied upon,

were all issued *prior* to the amendments to Rule 40, which specifically provide for a bail decision to be made in the arresting district.

The Government's final argument relates to the alleged issuance of a "no bond" warrant by District Court Judge McFadden. The arrest warrant that has been provided to this Court and to the Defendant is silent on this issue, although there is a sealed docket entry on the D.C. Docket that states: "The Court concurs with the recommendation of the Pretrial Services Agency to issue a no bond warrant. . . ." This Court is unable to find any reference to "no bond warrants" in the present federal rules, and the Court's question to the Government as to exactly what such a warrant is, has essentially gone unanswered. It appears that prior to the enactment of the Bail Reform Act, and decades before the amendment to Rule 40 at issue here, judges could affix bail amounts directly on federal arrest warrants. The apparent purpose of this was to provide a defendant with the avenue to post bail in the amount written on the warrant without awaiting the necessity of a hearing. In that regard, the process actually facilitated the early release of a defendant. It also appears that in certain jurisdictions judges had written the phrase "no bond" on warrants to indicate their desire that the defendant not be released. Again, the Court is not aware of any procedure in federal court involving a "no bond" warrant. Further, the concept that the judge in a prosecuting district could simply preclude the magistrate judge in an arresting district from making the very detention decision Congress authorized under Rule 40, by writing two words on a warrant, is illogical. *United States v. Thomas*, 992 F. Supp. 782, 786 (D.V.I. 1998) ("In view of this history, an endorsement of 'no bail' on a warrant via Rule 9(b)(1) cannot be used to circumvent the mandate of Rules 5 and

40 that the magistrate judge in the arresting district conduct a release hearing under the Bail Reform Act and either set conditions for the defendant's release or detain the defendant."); FED. R. CRIM. P. 9, Committee Notes, 2002 Amendments ("The rule has been amended to delete language permitting the court to set the amount of bail on the warrant. The Committee believes that this language is inconsistent with the 1984 Bail Reform Act.").

That is not to say that the views of the District Court Judge in the prosecuting district are not entitled to significant consideration by this Court, especially in circumstances such as this, where the District Court has had a documented history of dealings with the Defendant and therefore may well be in the best position to make a judgment. *See United States v. Savader*, 944 F. Supp.2d 209, 215 (E.D.N.Y. May 7, 2013) ("[T]hese decisions must be made with deference to the charging district, which will have access to better information concerning . . . the nature of the evidence."). In light of the foregoing, the Court declines the invitation to abdicate its responsibility to make a detention decision under Rule 40. Nevertheless, the Court will strongly take into consideration the fact that Judge McFadden issued a "no bond" warrant.

## II. DETENTION HEARING FINDINGS

The Court has considered the evidence and arguments presented and proffered at the Hearing, and thereafter submitted for review. Applying the relevant standards, this Court concludes that a modification of Judge McFadden's prior release order is appropriate to ensure the Defendant's appearance at the upcoming violation of supervised release hearing. In particular, considering the serious nature of the charges that are
- 9 -

presently pending and the allegations that the Defendant has been noncompliant and abusive during his supervision by the Northern District of New York, the Court does not believe that further conditions of release are available that the Defendant would comply with.  Detention is necessary to ensure the appearance of the Defendant in the District of Columbia, and to secure the safety of the community.  The District of Columbia District Court concluded, with good reason, that a mental health evaluation and follow-up by the Defendant were important elements of supervision.  This occurred after the Defendant had made a series of concerning statements to the Probation Office in the Northern District of New York.  Such statements included discussion of his sexual performance abilities; description of his genital size; expression of displeasure that he is required to reside with his mother and that "I want my fucking bus" (referring to the converted school bus that he formerly lived out of); expletives; and, most significantly,  "I can't wait for these bullies to have what they are dishing out come back to them," "The way they are treating me is like that of a terrorist. My own home country . . . they should try different tactics . . . this kind of treatment would tempt people most people to be radicalized. I'm not saying that's me. . . ."

     The mental health evaluation ordered by Judge McFadden has not occurred, and the Court is not persuaded by the Defendant's explanation for this failure.  The Defendant's mental health care is every bit as important as his work opportunities, and quite possibly more. The Court also does not credit the Defendant's alleged innocent explanation for calling the Probation Officer's family in Massachusetts.  The Defendant had Probation's number here in Albany, first in the paperwork that this Court provided to

him, *United States v. Fellows*, 21-MJ-32, Dkt. No. 7, and then in emails sent to him by his Probation Officer.  Even if he could not find those items, a simple Google search for the United States Probation Department in Albany, New York would lead to the necessary information, which is also posted on this Court's own website.  None of this explains a call to a former address of the Probation Officer, and the subsequent disconcerting discussion with her mother.

Successful supervision requires cooperation and compliance of the Defendant.  Mr. Fellows has not provided that, and his conduct to date has been both boorish and alarming.  Probation officers in this district, and others, are professionals, but there is certainly a limit to the type of conduct those officers should be subjected to.  Based upon the information provided by the Government, it appears a limit has been reached in this case.

In light of the foregoing, the Court concludes that the present conditions set by Judge McFadden are insufficient to ensure the safety of the community and the appearance of the Defendant.  Having considered the matter, and specifically considered the Defendant's noncompliance to date, the Court does not believe that any further conditions can be imposed that would result in Defendant's compliance.

**ACCORDINGLY**, the Defendant is remanded back to the custody United States Marshals to be transported to the District of Columbia for further proceedings pursuant

to 18 U.S.C. 3148(b).[1]

**SO ORDERED**.

Dated: June 23, 2021
      Albany, NY

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[1] The Court makes no finding as to the whether there is probable cause that the Defendant committed the alleged violation. *United States v. Jaitly*, 2009 WL 1675086, at *4 (E.D. Pa. June 15, 2009) ("[A] person arrested in one district for a violation of pretrial release conditions set in another district is not entitled to a preliminary hearing in the district of arrest.").